# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JENNIFER FAY JONES, :

    Plaintiff, :

vs. : CA 09-0622-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
    :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. 636(c), for all proceedings in this Court. (Docs. 16 & 18 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's

brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

Plaintiff alleges disability due to lymphedema. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.  The claimant has the following severe impairment: lymphedema (20 CFR 404.1521 *et seq.* and 416.921 *et seq*.).**
>
> **4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).**
>
> **5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).**
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The

---

[1] The Court granted the parties' joint motion to waive oral argument in this cause. (Doc. 17; *compare id. with* Doc. 14)

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See, e.g.,* Doc. 18 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant testified that her legs stay swollen causing her to have to elevate them when sleeping and sitting. She stated that she experiences pain at a "7" or "8" on a scale of 1 to 10. She stated that she can sit no longer than 4 minutes without her legs elevated.

**The claimant testified that she attends college night classes. She stated that she does not drive because she as (sic) no drier's (sic) license. She stated that she was taking Tylenol for pain relief.**

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms;

3

however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms **are not credible (as shown below) to the extent they are completely inconsistent with the above residual functional capacity assessment.**

Treatment notes and medical records document the claimant's history of Lymphdema (sic).

**Great weight is afforded the consultative examination of February 1, 2007 by Dr. Michael S. Jackson.** [Th]e claimant related that she has (sic) ceased work in September of 2006 due to Lymphedma (sic). Upon examination, Dr. Jackson also diagnosed the claimant as having chronic Lymphedema, with lower extremities['] pain and swelling. **He reported, however, that her gait was normal; sensation was normal in her lumbar spine; range of motion of the lumbar area and cervical area was normal, bilaterally.**

He reported that she does in fact have pitting edema in the lower extremities, and might need a cane to ambulate on uneven surfaces. **He added, however, that range of motion and strength was normal in the lower extremities.**

Treatment notes from Barnes' Family Medical Associates P.C. dated March, 2007, ducment (sic) her edema of the lower extremities. Dr. Stephen West, a treating source, reported on March 8, 2007 that he "wrote her off work." The undersigned notes that this is some 6 months beyond her current alleged onset of disability.

Dr. Stanley Barnes, another treating source, reported on September 30, 2008 that the claimant had chronic lymphedema with unknown etiology.

**The claimant has never been hospitalized or referred to a pain clinic for her condition.** She acknowledged on a Daily Activities Report that she is the care giver for her small child.

4

The claimant reported that she cannot stand long enough to do household chores. She stated that she cannot stand or walk for any length of time and has to depend on others to perform her outside activities for her. She indicated that she cannot drive an automobile but indicated that she can ride in one. She stated that [she] has to depend on others for transportation.

**At the hearing, the claimant testified that she does not drive because she has no driver's license. She also testified that she attends college night classes[] (presumably with her feet elevated) which would indicate that her pain does not prevent her from performing sedentary activities.**

Concerning the claimant's medications, she indicated that she **no longer uses Lortab for pain relief due to side effects (itching).** She reported that she [started using] Lyrica and Darvocet beginning on April 30, 2008 and September 30, 2008, respectively. She reported that she uses over the counter medication such as Tylenol for pain relief.

The undersigned acknowledges the Doctor's Statement from Vanity Fair Mills dated March 8, 2007. This form indicates that the claimant could "never" return to work, but no narrative explanation was provided and no indications of other work that she is capable of performing. The form simply indicated she had "pitting in both legs" and "pain in legs" and could never return to work. **This form was completed by her employer and, as stated previously, did not considered (sic) other work activity. It is therefore, afforded no weight.**

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

.   .   .

**7.     The claimant was born on July 14, 1964 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and**

**416.963).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

> Based on a residual functional capacity for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.28.
>
> **11. The claimant has not been under a disability, as defined in the Social Security Act, from September 11, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 15-17 & 17-18 (emphasis in original; some internal citations omitted))

The Appeals Council affirmed the ALJ's decision (Tr. 1- 3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

### **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work

7

history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Court is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform the full range of sedentary work and is not disabled under the grids, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, plaintiff contends that the following errors were made: (1) the ALJ failed to properly articulate and apply the pain standard as required by the Eleventh Circuit; (2) the ALJ failed to issue a credibility finding in compliance with the Eleventh Circuit law; and (3) the ALJ failed to show good cause for not according greater weight to the opinion of her treating physician. Because the undersigned agrees with the plaintiff on her claim that the ALJ

8

made an improper credibility determination, and additionally finds that the ALJ failed to meet his fifth-step burden, the Court need not consider the other issues raised by Jones. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

    **A.**    **Credibility Determination.** The Eleventh Circuit has established a three-part pain standard that applies when a claimant attempts to establish her disability through testimony of pain. "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted). "A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain. 20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory

findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

The Court agrees with the plaintiff that the ALJ did not properly apply the Eleventh Circuit's articulated pain standard because once he determined that plaintiff's lymphedema could reasonably be expected to produce the pain about which she complained, he misapplied (or failed to acknowledge) several of the 20 C.F.R. § 404.1529 factors he was required to consider in assessing the credibility of plaintiff's statements, s*ee* 20 C.F.R. § 404.1529(c)(3) (2009) ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . . Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes

every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."), to an extent that this Court cannot find his credibility determination supported by substantial evidence. In particular, the ALJ incorrectly noted that plaintiff attends college night classes[3] and that she is the care giver for a small child. (Tr. 16-17)[4] In fact, the record indicates that it is plaintiff's daughter who attends night classes (Tr. 52-53) and that her granddaughter's other grandmother cares for plaintiff's granddaughter when her daughter attends those night classes (Tr. 53). In addition, the evidence of record is clear that the very nature of plaintiff's condition, chronic lymphedema,[5] requires that petitioner elevate her legs due to swelling and pain. (*See, e.g.,* Tr. 295 & 301) In fact, the consultative physician upon whom the ALJ relies to find that

---

[3] The undersigned cannot agree with the government's argument that the ALJ's misstatement in this regard was harmless error (Doc. 19, at 10) since the ALJ specifically found that this evidence–attending college night classes–indicated that plaintiff's pain does not prevent her performance of sedentary activities (Tr. 17).

[4] In making these observations, the ALJ presumably was trying to suggest that plaintiff's daily activities are not as limited as she indicated.

[5] Lymphedema is "chronic unilateral or bilateral edema of the extremities due to accumulation of interstitial fluid as a result of stasis of lymph, which is secondary to obstruction of lymph vessels or disorders of the lymph nodes." THE SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY, at 425 (1987).

plaintiff can perform sedentary work, Dr. Michelle Jackson,[6] noted the need to elevate the legs. (Tr. 321) Thus, there is clear evidence that plaintiff must take measures, other than medication, to relieve her swelling and pain. Finally, the ALJ makes no mention of the fact that plaintiff wears compression hose which, again , is a treatment, other than pain medication, she has received to alleviate her pain and swelling.

In light of the foregoing deficiencies in the ALJ's credibility analysis, the Court is unable to find that the ALJ articulated specific and adequate reasons for discrediting plaintiff's subjective pain/swelling/elevation complaints. Accordingly, a remand for further proceedings is needed.

**B.** **Plaintiff's Ability to Perform a Full Range of Sedentary Work**. The undersigned finds there to be a more fundamental problem with the ALJ's decision that requires the remand of this case. The ALJ's ultimate conclusion was that the plaintiff is capable of performing the full range of sedentary work and is not disabled under the grids. The ALJ did not use the grids as a framework for decision-making; instead, he mechanically applied the grids in finding her not disabled. (*See* Tr. 18)[7] This was error in light of the

---

[6] The ALJ misidentified Dr. Michelle Jackson as Dr. Michael Jackson. (*See* Tr. 16)

[7] He did this despite the fact that plaintiff's primary limitations are swelling and pain, that is, non-exertional limitations/impairments, that cause the need to elevate her feet.

12

evidence in this case.

It has long been recognized in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted). One means by which the Commissioner meets this burden is by reliance on the medical-vocational guidelines ("grids"). *Id.* at 1201-1202 (citations omitted). Exclusive reliance upon the grids is inappropriate, however, ""'either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.'"" *Id.* at 1202 (quoting *Walker v. Bowen,* 826 F.2d 996, 1002-1003 (11th Cir. 1987), in turn quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)). Normally, when non-exertional limitations are alleged "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *see Francis*, 749 F.2d at 1566 ("The

preferred method of demonstrating job availability when the grids are not controlling is through expert vocational testimony"). "'It is only when the claimant can clearly do *unlimited* types of light work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.'" *Allen*, 880 F.2d at 1202 (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A March 30, 1981)); *see also Foote, supra,* 67 F.3d at 1559 ("If the grids are inapplicable, the Secretary must seek vocational expert testimony."). Where non-exertional impairments are present "[t]he ALJ must '"make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations."'" *Id.* (citations omitted). "If nonexertional impairments exist, the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), citing *Wolfe v. Chater*, 86 F.3d 1072, 1077-1078 (11th Cir. 1996). In *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004), the Eleventh Circuit reiterated its earlier holding that "'[e]xclusive

reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills[,]" and held that "[i]f *either* condition exists, the ALJ [is] required to consult a vocational expert." The *Phillips* court held that if an ALJ determines that a claimant's nonexertional limitations "significantly limit her basic work skills at the sedentary work level, then the ALJ **must** consult a vocational expert." *Id*. at 1243 (emphasis added).

Here, the ALJ made no specific finding regarding whether Jones' non-exertional limitations/impairments permit her to perform the full range of sedentary work (*see* Tr. 18) and, because pain is regarded as a non-exertional impairment, *Foote, supra*, 67 F.3d at 1559 ("Pain is a nonexertional impairment."); *see Phillips, supra*, 357 F.3d at 1242 n.11 ("Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all other physical limitations that are not included in the seven strength demands."), as arguably is swelling, *cf. Lewis v. Astrue*, 2009 WL 1659365, *4 (M.D. Fla. 2009) ("Plaintiff protests the ALJ's use of the grids for decision in this case in light of Plaitniff's significant nonexertional limitations. In particular, he notes

his pain and swelling problems and environmental restrictions assessed by the nonexamining doctor, relied upon for the RFC finding by the ALJ."), the ALJ erred in failing to consult a vocational expert to determine what sedentary jobs, if any, the claimant can perform given her exertional and non-exertional impairments and limitations.[8] On remand,[9] the ALJ should follow *Phillips*, and prior Eleventh Circuit precedent, and obtain the services of a vocational expert in order to attempt to satisfy the Commissioner's fifth-step burden of establishing what work activity, if any, Jones is capable of performing given her exertional and non-exertional impairments and limitations.[10]

---

[8] Interestingly, the ALJ did obtain the services of a vocational expert at the hearing but did not avail himself of any of the expert's testimony with respect to the fifth-step of the sequential evaluation process. (*Compare* Tr. 18 *with* Tr. 68-75) Perhaps this is because of the VE's testimony that the sedentary jobs he identified would be eliminated if an individual had need to elevate her lower extremities. (*See* Tr. 74 ("As a general rule of thumb the need to elevate your lower extremities limits your reach to the point you cannot fully function in a work setting, so sedentary employment would not be appropriate."))

[9] Remand will also offer the ALJ the opportunity to investigate to what extent plaintiff's lymphedema impacts her upper extremities.

[10] This Court would note that Dr. Michelle Jackson did not indicate plaintiff could perform all unskilled sedentary jobs in the national economy. (*See* Tr. 321 ("[U]nfortunately there is no cure for lymphedema, so she is just going to have some chronic discomfort and chronic swelling. This might limit her amount of time she can stand on her feet and walk at a job but certainly does not make her totally or completely disabled. She can certainly due (sic) numerous sedentary positions with her current medical conditions."))

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 22nd day of April, 2010.

    s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**